The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts, v. Waukegan State Bank.

Intervening Petition of Harry J. McKean, Alias H. J. McKean, Appellee, v. William L. O'Connell, Appellant.

Gen. No. 8,973.

Dove, J., dissenting.

Opinion filed December 5, 1935. Rehearing denied January 9, 1936.

WILLIAM C. CONNOR, of Chicago, for appellant.

HERMAN C. LITCHFIELD, of Waukegan, for appellee; HARTLEY E. LACHAPELLE, of counsel.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

Appellee McKean was indebted to the Waukegan State Bank in the sum of $8,000, the bank holding his note for this amount. On June 17, 1931, appellee went to the bank for the purpose of paying his note. There he talked with various officers and employees of the bank including the president and cashier. He was advised by such persons that the bank was not at that time in possession of his note and could not make delivery of the same to him upon payment, whereupon appellee declined to pay same. He then undertook to withdraw his entire deposit from the bank. The bank officer refused to give him the money. He then had a

conversation with the president of the bank in which he advised the president that he proposed procuring an assignment of the deposit of the Security Industrial Finance Company's account in said bank. Appellee was president of said finance company. Following the above conversation, appellee did procure an assignment of said finance company's deposit. He later returned to the bank with this assignment and presented the same to the president, who stated that it would be all right for him to keep it. The bank continued its regular banking business, accepting such deposits as its customers made, until the usual closing hour of that day. It never thereafter reopened for business, and subsequently was placed in receivership by the auditor of public accounts. Appellee claimed the right of set-off against his indebtedness to the bank, of his deposit and of the deposit of the Security Industrial Finance Company, for which he held the assignment. Appellant contested the right of appellee to set-off, with respect to the deposit of the Security Finance Company, claiming fraud and bad faith on the part of appellee, in that he knew the bank was insolvent and was going to close. The trial court granted to appellee the right of set-off upon said deposit.

Appellant prosecutes this appeal from the decree of the court in that respect.

It has been definitely settled that a receiver of a bank takes the assets subject to all valid rights, liens and equities subsisting between the bank and its creditors. The relationship between a bank and a depositor being that of debtor and creditor, the bank may make payment out of the depositor's account upon his direction, which may be oral as well as written. Michie, Banks and Banking, Vol. 5, pp. 93, 180. It has further been recognized that a bank receiver must set off the maker's deposit against his debt without any express agreement, and the deposit of another, upon express agreement. Michie, Banks and Banking, Vol.

5, pp. 225, 226. The rule that the right to set-off against an insolvent bank is to be governed by the state of facts existing at the time of insolvency should be given a reasonable interpretation and construction. The facts in this case show that the bank in question continued in the usual course of business until the regular closing hour on June 17, 1931. It did not thereafter reopen for business. A receiver was later appointed for said bank. The bill by which the assets of the bank were impounded for the benefit of creditors was filed by the auditor of public accounts on August 15, 1931.

Those who are charged with the management and operation of a bank should have knowledge of its financial condition, but its customers who deposit their money therein are not chargeable with such knowledge except upon clear and convincing proof. It may be stated as a general proposition that the suspension of business on the part of a bank constitutes the first positive knowledge and information of its insolvency, so far as the general public doing business with such bank is concerned. It is not to be presumed that those in charge of a bank's affairs advise people who come to the bank to transact their business, that the institution is insolvent and about to close. The acts of its customers in transacting such business, and making deposits, refute any presumption of knowledge of insolvency upon their part. Nor is there anything irregular in the fact that a customer of a bank attempts to pay his note, or attempts to withdraw money on deposit. The relation of debtor and creditor exists with respect to such deposits.

The court found by its decree that appellee was indebted to the bank in the sum of $8,000, together with the accumulated interest thereon; that at the time of the suspension of business by said bank, appellee had on deposit therein the total sum of $6,315.37, repre-

sented by his individual account and by the deposit of the Security Industrial Finance Company. We know of no rule of law to prevent an assignment by a depositor of his deposit in a bank. In the absence of independent knowledge of insolvency on the part of an assignee of such depositor, the subsequent suspension of business by the bank in no wise affects such assignee's rights as the owner of such deposit, either in a claim thereon or in the right of set-off. An assignee of a depositor who takes a bona fide assignment of such deposit for value, before suspension of business by the bank, and without knowledge of insolvency, should be protected in his rights; and, in case of subsequent suspension by the bank, is entitled to prosecute his claim upon such deposit, or to set off the same against his indebtedness to such bank.

The bank was open in the usual and customary manner at the time appellee presented his assignment of this deposit to the president. There is no proof that he was advised by any of the officers in charge of the bank that it was insolvent and was going to suspend business. It is not probable that the condition of insolvency arose upon that particular day, or upon any other particular day, as such conditions necessarily develop over a period of time. Financial impairment of a bank's assets, even though extreme, does not always result in the suspension of business.

We find nothing in this record to establish fraud upon the part of appellee as claimed by appellant. The decree of the trial court is therefore affirmed.

*Decree affirmed.*

Mr. Justice Dove dissenting: The evidence in this record convinces me that appellee knew on June 17, 1931, that the Waukegan State Bank was insolvent. His note was not due and he had no valid assignment of the deposit of the Security Finance Company.